UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

JOSEPH LATORRE, Administrator of the Estate of ROGELIO LATORRE, deceased,
4867 Columbia Rd., Apt. 202
North Olmsted, Ohio 44070

Plaintiff,

v.

CUYAHOGA COUNTY, OHIO
c/o Michael C. O'Malley, Cuyahoga County Prosecutor
2079 East 9th Street
Cleveland, Ohio 44115

and

CUYAHOGA COUNTY CORRECTIONS CENTER
1215 West 3rd Street
Cleveland, Ohio 44113

and

CUYAHOGA COUNTY SHERIFF'S DEPARTMENT
1215 West 3rd Street
Cleveland, Ohio 44113

and

HAROLD PRETEL
Cuyahoga County Sheriff (in his official and personal capacities)
c/o Cuyahoga County Sheriff's Department
1215 West 3rd Street
Cleveland, Ohio 44113

and

CASE NO.: 1:24-cv-02006

Judge Patricia A Gaughan

**PLAINTIFF'S SECOND AMENDED COMPLAINT**

(Jury Demand Endorsed Hereon)

NESTOR RIVERA
Cuyahoga County Chief of Corrections (in his official and personal capacities)
c/o Cuyahoga County Sheriff's Department
1215 West 3rd Street
Cleveland, Ohio 44113

and

ARMOND BUDISH
As former Cuyahoga County Executive (in his official and personal capacities)
c/o Cuyahoga County Department of Law
2079 East 9th Street
Cleveland, Ohio 44115

and

CHRIS RONAYNE
Cuyahoga County Executive (in his official and personal capacities)
c/o Cuyahoga County Department of Law
2079 East 9th Street
Cleveland, Ohio 44115

and

MICHELLE HENRY
Cuyahoga County Warden (in her official and personal capacities)
c/o Cuyahoga County Sheriff's Department
1215 West 3rd Street
Cleveland, Ohio 44113

and

DALE SOLTIS
Chief Deputy (in his official and personal capacities)
c/o Cuyahoga County Sheriff's Department
1215 West 3rd Street
Cleveland, Ohio 44113

and

PERNEL JONES, JR.
President, Cuyahoga County Boards and Commissions (in his official and personal capacities)
c/o Cuyahoga County Department of Law
2079 East 9th Street
Cleveland, Ohio 44115

and

RHONDA GIBSON
Administrator of Corrections (in her official and personal capacities)
c/o Cuyahoga County Sheriff's Department
1215 West 3rd Street
Cleveland, Ohio 44113

and

BRANDY CARNEY
Director of Public Safety and Justice Service's (in her official and personal capacities)
c/o Cuyahoga County Department of Law
2079 East 9th Street
Cleveland, Ohio 44115

and

THE METROHEALTH SYSTEM
c/o The Metrohealth System, Statutory Agent
2500 MetroHealth Drive
Cleveland, Ohio 44109

and

JULIA BRUNER, M.D.
Senior Vice President of Behavioral Health and Correctional Medicine Operations
(in her official and personal capacities)
c/o The Metrohealth System, Statutory Agent
2500 MetroHealth Drive
Cleveland, Ohio 44109

| | |
|---|---|
| and | ) |
| | ) |
| LAUREL DOMANSKI DIAZ | ) |
| Cuyahoga County Administrator of | ) |
| Correctional Medicine (in her official and | ) |
| personal capacities) | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| and | ) |
| | ) |
| SERGEANT STEVEN BOARDMAN | ) |
| Cuyahoga County Corrections Officer (in his | ) |
| official and personal capacities) | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| SERGEANT JOHNNY O'MEARA | ) |
| Cuyahoga County Corrections Officer (in his | ) |
| official and personal capacities) | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| CORPORAL DESIREE BURTON | ) |
| Cuyahoga County Jail Supervisor (in her | ) |
| official and personal capacities) | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| CORPORAL TERRY BOYCE | ) |
| Cuyahoga County Jail Supervisor (in his | ) |
| official and personal capacities) | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |

CORPORAL CARLISHA GRIFFIN )
Cuyahoga County Jail Supervisor (in her )
official and personal capacities) )
c/o Cuyahoga County Department of Law )
2079 East 9th Street )
Cleveland, Ohio 44115 )
)
And )
)
CORRECTIONS OFFICER THOMAS )
DUNKIN )
Cuyahoga County Corrections Officer (in his )
official and personal capacities )
c/o Cuyahoga County Department of Law )
2079 East 9th Street )
Cleveland, Ohio 44115 )
)
And )
CORRECTIONS OFFICER PAUL JONES )
Cuyahoga County Corrections Officer (in his )
official and personal capacities )
c/o Cuyahoga County Department of Law )
2079 East 9th Street )
Cleveland, Ohio 44115 )
)
And )
CORRECTIONS OFFICER JESSE TRIGG )
Cuyahoga County Corrections Officer (in his )
official and personal capacities )
c/o Cuyahoga County Department of Law )
2079 East 9th Street )
Cleveland, Ohio 44115 )
)
And )
CORRECTIONS OFFICER KONIBA )
SISSOKO )
Cuyahoga County Corrections Officer (in his )
official and personal capacities )
c/o Cuyahoga County Department of Law )
2079 East 9th Street )
Cleveland, Ohio 44115 )
)
And )
)

| | |
|---|---|
| CORRECTIONS OFFICER CHRISTOPHER | ) |
| MCCREE | ) |
| Cuyahoga County Corrections Officer (in his | ) |
| official and personal capacities | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| CORRECTIONS OFFICER BRANDON | ) |
| ROBERTSON | ) |
| Cuyahoga County Corrections Officer (in his | ) |
| official and personal capacities | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| CORRECTIONS OFFICER S. DAVIS | ) |
| First name unknown | ) |
| Cuyahoga County Corrections Officer (in his | ) |
| official and personal capacities | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| NURSE REESE | ) |
| First name unknown, but known to Defendant | ) |
| Cuyahoga | ) |
| Cuyahoga County Corrections Nurse (in his | ) |
| official and personal capacities | ) |
| c/o Cuyahoga County Department of Law | ) |
| 2079 East 9th Street | ) |
| Cleveland, Ohio 44115 | ) |
| | ) |
| And | ) |
| | ) |
| JOHN AND/OR JANE DOE CORRECTIONS | ) |
| OFFICERS 1-5, Names unknown and | ) |
| addresses unknown, | ) |
| who knew Rogelio Latorre had a serious | ) |
| medical condition yet acted with deliberate | ) |
| | ) |

indifference with regard to the serious medical condition. )
c/o Cuyahoga County Sheriff's Department )
1215 West 3rd Street )
Cleveland, Ohio 44113 )

and )

JOHN AND/OR JANE DOE PRISON STAFF 1-5, Names unknown and addresses unknown, Cuyahoga County Corrections Center staff and employees who knew Rogelio Latorre had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition. )
c/o Cuyahoga County Sheriff's Department )
1215 West 3rd Street )
Cleveland, Ohio 44113 )

and )

JOHN AND/OR JANE DOE MEDICAL PROVIDERS 1-5, Names unknown and addresses unknown, physicians, nurses and/or medical staff who provided care and medical services to inmates at Cuyahoga County Corrections Center, and who otherwise knew Rogelio Latorre had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition. )
c/o The Metrohealth System, Statutory Agent )
2500 MetroHealth Drive )
Cleveland, Ohio 44109 )

Defendants. )

Plaintiff Joseph Latorre, a citizen of the United States, as Administrator of the Estate of Rogelio Latorre, by and through undersigned counsel, for his Amended Complaint against the above-named Defendants, states and avers as follows:

**PARTIES**

1. At all times material, Plaintiff Joseph Latorre ("Plaintiff") was/is the duly appointed Administrator and personal representative of the Estate of Rogelio Latorre ("Decedent") (*See Estate of Rogelio Latorre, Case No. 2024EST293255, Probate Court of Cuyahoga County*, *Ohio*), and brings this action pursuant to, among other things, 42 U.S.C. 1983, 42 U.S.C. 1395, medical negligence, State of Ohio's Wrongful Death Statute, R.C. 2125.01 *et seq.*, and Ohio Survival Statute, for the suffering of Decedent and for the benefit of Decedent's heirs, beneficiaries, and next of kin, who have suffered a loss of support, services, attention, and guidance, and who have endured mental anguish and have been otherwise damaged by the wrongful and untimely death of Decedent.

2. Prior to Decedents untimely death, Rogelio Latorre was an inmate in the Cuyahoga County Corrections Center (hereinafter "CCCC"), a citizen of the United States of America residing in the state of Ohio and entitled to the protections of the Constitutions and laws of the United States of America and the State of Ohio including Due Process and the right to be free from cruel and unusual punishment.

3. Defendant Cuyahoga County, Ohio ("the County") was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. Defendant Cuyahoga County is a "person" under 42 U.S.C. § 1983. Defendant Cuyahoga County is

the employer and principal of Defendants Harold Pretel, Nestor Rivera, Armond Budish, Chris Ronayne, Michelle Henry, Dale Soltis, Pernel Jones, Jr., Rhonda Gibson, Brandy Carney, Julia Bruner, M.D., Guard Defendants, Rees, and Laurel Domanski Diaz and are responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center (hereinafter referred to as the "County Jail" or "CCCC").

4. Cuyahoga County and all the Defendants listed herein operated CCCC, which is located at 1215 W. 3rd St, Cleveland, OH 44113, where decedent was an inmate in November of 2023.

5. At all times material Harold Pretel ("Pretel"), was and is the Cuyahoga County Sherriff with responsibilities for the Cuyahoga County Corrections Center. At all times relevant to the allegations made in this complaint, Pretel was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Pretel has final policymaking authority over policies, practices, and customs of the CCCC. He is sued as a county employee as well as his individual capacity. He is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because he was personally involved. He himself acted with deliberate indifference to Rogelio Latorre. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

6. Defendant Nestor Rivera ("Rivera") is the Chief of Corrections for Cuyahoga County. At all times material, he was acting in his official capacity, within the

scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Rivera was final policymaking authority over the policies, practices, and customs of the CCCC. He is sued in his role as the former county executive as well as his individual capacity. He was personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because he was personally involved. He himself acted with deliberate indifference to Rogelio Latorre. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

7. Defendant Armond Budish ("Budish") is the former Cuyahoga County Executive. At all times material, he was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Budish was final policymaking authority over the policies, practices, and customs of the CCCC. He is sued in his role as the former county executive as well as his individual capacity. He was personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because he was personally involved. He himself acted with deliberate indifference to Rogelio Latorre. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

8. Defendant Chris Ronayne ("Ronayne") is the Cuyahoga County Executive. At all times material, he was acting in his official capacity, within the scope of his

employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Ronayne has final policymaking authority over the policies, practices, and customs of the CCCC. He is sued in his role as county executive as well as his individual capacity. He is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because he was personally involved. He himself acted with deliberate indifference to Rogelio Latorre. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

9. At all times material Michelle Henry ("Henry"), was and is the Cuyahoga County Corrections Center Warden with responsibilities for the Cuyahoga County Corrections Center. At all times relevant to the allegations made in this complaint, Henry was acting in her official capacity, within the scope of her employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Henry has final policymaking authority over policies, practices, and customs of the CCCC. She is sued as a county employee as well as her individual capacity. She is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because she was personally involved. She herself acted with deliberate indifference to Rogelio Latorre. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

10. Defendant Dale Soltis ("Soltis") is the Cuyahoga County Chief Deputy. At all times material, he was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Soltis has final policymaking authority over the policies, practices, and customs of the CCCC. He is sued in his role as county executive as well as his individual capacity. He is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because he was personally involved. He himself acted with deliberate indifference to Rogelio Latorre. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

11. Defendant Pernel Jones, Jr. ("Jones") is the President of Cuyahoga County Boards and Commissions. At all times material, he was acting in his official capacity, within the scope of his employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Jones has final policymaking authority over the policies, practices, and customs of the CCCC. He is sued in his role as county executive as well as his individual capacity. He is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because he was personally involved. He himself acted with deliberate indifference to Rogelio Latorre. Moreover, he encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

12. At all times material Rhonda Gibson ("Gibson"), was and is the Administrator of Corrections with responsibilities for the Cuyahoga County Corrections Center. At all times relevant to the allegations made in this complaint, Gibson was acting in her official capacity, within the scope of her employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Gibson has final policymaking authority over policies, practices, and customs of the CCCC. She is sued as a county employee as well as her individual capacity. She is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because she was personally involved. She herself acted with deliberate indifference to Rogelio Latorre. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

13. At all times material Brandy Carney ("Carney"), was and is the Cuyahoga County Director of Public Safety and Justice Service's with responsibilities for the Cuyahoga County Corrections Center. At all times relevant to the allegations made in this complaint, Carney was acting in her official capacity, within the scope of her employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Carney has final policymaking authority over policies, practices, and customs of the CCCC. She is sued as a county employee as well as her individual capacity. She is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because she was personally involved. She herself acted with

deliberate indifference to Rogelio Latorre. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

14. At all times material Defendant, The Metrohealth System ("Metro") was and is a corporation and/or other legal entity duly organized and existing pursuant to the laws of the State of Ohio, operated health care facilities including ones at the Cuyahoga County Corrections Center and held themselves out as a provider of medical care services to the public including Decedent. Metro was and is a political subdivision and unit of local government duly organized under the laws of the State of Ohio residing in the Northern District of Ohio acting under the color of law. The County contracts with Metro to oversee and provide medical and mental health services at the Cuyahoga County Corrections Center. Metro is a "person" under 42 U.S.C. §1983 and is responsible for the polices, practices, and customs related to medical and mental health care in the Cuyahoga County Corrections Center.

15. At all times material Julia Bruner, M.D. ("Bruner"), was and is the Senior Vice President of Behavioral Health & Correctional Medicine Operation responsibilities for the Cuyahoga County Corrections Center. At all times relevant to the allegations made in this complaint, Diaz was acting in her official capacity, within the scope of her employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Diaz has final policymaking authority over policies, practices, and customs of the CCCC. She is sued as a county employee as well as her individual capacity. She is personally responsible for the unconstitutional acts

committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because she was personally involved. She herself acted with deliberate indifference to Rogelio Latorre. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

16. At all times material Laurel Domanski Diaz ("Diaz"), was and is the Administrator of Correctional Medicine with responsibilities for the Cuyahoga County Corrections Center. At all times relevant to the allegations made in this complaint, Diaz was acting in her official capacity, within the scope of her employment, under color of law, and is responsible for the policies, practices, and customs of the Cuyahoga County Corrections Center. Diaz has final policymaking authority over policies, practices, and customs of the CCCC. She is sued as a county employee as well as her individual capacity. She is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because she was personally involved. She herself acted with deliberate indifference to Rogelio Latorre. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

17. At all times material Defendants Boardman, O'Meara, Burton, Boyce, Griffin, Dunkin, Jones, Trigg, McCree, Sissoko, Robeston, and Davis (hereinafter the "Guard Defendants") were guards who knew Decedent had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition and were tasked with caring for Decedent, and under the color of law, were directly responsible for

Decedents custody, supervision, and care. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition. Guard Defendants were previously identified in the First Amended Complaint as John Does and Jane Doe Corrections Officers, but their names are now known by Plaintiff because of the disclosures filed in this case.

18. At all times material Defendant Reese ("Reese") was a nurse at the Cuyahoga County Corrections Center, who provided care and medical services to inmates at Cuyahoga County Corrections Center. She otherwise knew Decedent had a serious medical condition yet acted with deliberate indifference regarding the serious medical condition, and were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care. She had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition. Defendant Reese was previously identified in the First Amended Complaint as John Does and Jane Doe Medical Provider, but her name is now known by Plaintiff because of the disclosures filed in this case.

19. At all times material Defendants John and/or Jane Doe Corrections Officers 1-5 (Hereinafter "Doe Corrections", or "Doe Officers") were guards who knew Decedent had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition and were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care. They had

direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.

20. The exact names of John and/or Jane Doe Corrections 1-5 are currently unknown to Plaintiff despite reasonable efforts to obtain them and naming them here and now would likely name them mistakenly. They are, however, guards who had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition. They will know who they are when this Complaint is served upon them at the Cuyahoga County Sheriff's Department. Hereinafter, any and all allegations made against the County include the allegations against John and/or Jane Doe Corrections Officers 1-5.

21. At all times material Defendants, John and/or Jane Doe Prison Staff 1-5 (hereinafter "Doe Staff") were staff and employees who knew Decedent had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition and were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition.

22. The exact names of John and/or Jane Doe Staff 1-5 are currently unknown to Plaintiff despite reasonable efforts to obtain them and naming them here and now would likely name them mistakenly. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with

deliberate indifference to the serious medical condition. They will know who they are when this Complaint is served upon them at the Cuyahoga County Sheriff's Department. Hereinafter, any and all allegations made against the County include the allegations against John and/or Jane Doe Prison Staff 1-5.

23. At all times material Defendants John and/or Jane Doe Medical Providers 1-5 (hereinafter "Doe Medical") were staff and employee, including, physicians, nurses and/or medical staff, who provided care and medical services to inmates at Cuyahoga County Corrections Center, and who otherwise knew Decedent had a serious medical condition yet acted with deliberate indifference with regard to the serious medical condition, and were tasked with caring for Decedent, and under the color of law, were directly responsible for Decedents custody, supervision, and care. They had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition

24. The exact names of John and/or Jane Doe Medical 1-5 are currently unknown to Plaintiff despite reasonable efforts to obtain them and naming them here and now would likely name them mistakenly. They are, however, guards who had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition. They will know who they are when this Complaint is served upon them at The Metrohealth System. Hereinafter, any and all allegations made against the County include the allegations against John and/or Jane Doe Medical 1-5.

25. At all times material, the County and Metro employed and/or contracted with and/or contracted for the provision of services by physicians, nurses, and other medical care providers who provided medical care to Decedent, and in so doing, were acting within the course and scope of the duties of their employment and/or agency with said Defendants, such that said Defendants are liable for their conduct pursuant to the doctrine of *respondeat superior*.

26. At all times material, the County and Metro deprived Rogelio Latorre of constitutional rights and they are responsible because the deprivation stemmed from official policies and customs such that they are liable pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

27. The County and Metro knew of clear and persistent pattern of violations of rights at the Cuyahoga County Corrections Center, they had notice of said violations, and the approved and/or tacitly approved amounting to an official policy of inaction. Moreover, this was the moving force or direct causal link in the constitutional deprivation.

28. The County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz were responsible for the administration, operation, and supervision of the Cuyahoga County Corrections Center and facilities and for the promulgation, enforcement and review of rules, regulations, policies, training, customs, and practices relevant thereto, and were all acting under the color of law.

29. The County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and Metro operated, maintained and/or controlled the Cuyahoga County Corrections Center where decedent was held from November 15, 2023 to

November 16, 2023, during which time he was under the exclusive custody, control and care of said Defendants, including the employees and agents of said Defendants.

30. The County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and Metro had direct contact with decedent and knew or should have known of his serious medical condition but, under color of state law, acted with deliberate indifference to the serious medical condition and constitutional rights. Moreover, the policies, procedures, lack of training and customs adopted and/or promulgated under color of state law showed deliberate indifference.

31. At all times Material the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and Metro were under a non-delegable duty to ensure that detainees at the Cuyahoga County Corrections Center were not unreasonably denied medical treatment in violation of their Constitutional rights and were not deprived of other constitutional rights.

32. At all times material the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and Metro were under a non-delegable duty to promulgate policies, practices, procedures, and/or customs and to train employees to ensure that detainees at the Cuyahoga County Corrections Center were not unreasonably denied medical treatment in violation of their Constitutional rights and were not deprived of other constitutional rights.

33. At all times material the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and Metro were under a non-delegable duty to promulgate policies, practices, procedures, and/or customs and to train employees to

ensure that detainees at the Cuyahoga County Corrections Center were provided with adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and attention.

34. At all times material the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and Metro were under a non-delegable duty to provide adequate, necessary, and reasonable medical and mental health care, screening, assessment, treatment, intervention, referral, and attention to those detained at the Cuyahoga County Corrections Center.

33. All Defendants caused and are responsible for the unlawful conduct and resulting harm by, *inter alia*, personally participating in the conduct, or acting jointly and in concert with others who did; by authorizing, acquiescing, or failing or refusing, with deliberate indifference to and reckless disregard for Rogelio Latorre's clearly established and known rights, to initiate and maintain adequate training, supervision, and staffing; by failing to maintain proper and adequate policies, procedures and protocols, and customs and practices; and by ratifying the unlawful conduct performed by agents and officers, deputies, medical providers, personnel, and employees under their direction, supervision, and control.

34. All Defendants acted together and/or in concert and/or acted as joint ventures in the operation of the Cuyahoga County Corrections Center such that they are all equally responsible for any actions or inactions at that location.

35. At all times material, all the medical care and services that were provided to Decedent that are the subject of this Complaint were understood by Decedent and his

family to be provided by the Defendants and took place at facilities owned and/or operated by the Defendants. The Defendants represented that it was them who provided care, not independent contractors. If medical care and services were provided by an individual not named as a Defendant, and that care was negligent and below the standard of care Plaintiff and decedent understood, and there was no indication to the contrary, that the medical care and services was provided by all Defendants.

36. To the extent that Plaintiff's Complaint requires an affidavit of merit, Plaintiff seeks an extension of time to file an Affidavit of Merit. The Sixth Circuit Court of Appeals, however, recently released its decision in *Gallivan v. United States,* No. 18-3874 (U.S. Dist. Ct. 6th Cir., November 7, 2019) and held that an affidavit of merit is not required in Federal Court.

**OVERVIEW**

37. Plaintiff seeks relief for, amongst other things, violation of the Decedent's rights secured and guaranteed by Title 42, Section 1983 of the United States Code ("U.S.C."), the Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution, the laws of the United States including Due Process of law, and the laws of the State of Ohio. Claims are also brought pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

38. On or about November 25, 2023, Decedent, only 25 years old, was being held in the Cuyahoga County Corrections Center as a pre-trial detainee and was awaiting trial on allegations of drug possession.

39. During Decedent's Court sentencing and then at the jail intake assessment on November 15, 2023, there were indications, and it became known that Decedent posed a risk of self-harm and/or engaged in excessive drug use; specifically, that he had attempted in the past to harm himself and engaged in excessive drug use. In fact, he had numerous signs and symptoms of an individual contemplating self-harming behavior or contemplating excessive drug use. The seriousness of these signs and symptoms was so obvious that even a lay person would easily recognize the necessity for a doctor's attention and/or further assessment and treatment.

40. In addition, Decedent reported, upon information and belief, additional signs and symptoms of drug use, self-harm and/or suicidal ideation on November 15, 2023 to nurses, staff, guards and currently unknown individuals at the Cuyahoga County Corrections Center named herein who, acting under color of state law, realized a serious medical and psychological condition yet acted with deliberate indifference, including a failure to adequately monitor Decedent for excessive drug use, the need for detoxification, and the need for timely mental health assessments with regard to those serious medical conditions. Defendants failed to act and failed to provide care and/or transfer for care in a timely fashion. There was no legitimate reason to fail to act on the part of Defendants; for example, Decedent was not a frequent requestor of unwarranted medical services. Rather, Defendants acted with deliberate indifference. Specifically, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Guard Defendants, Doe Staff, Doe Corrections, Doe Medical, Henry and Diaz acted with deliberate indifference to serious medical and psychological needs by having a custom, policy, or practice of ignoring

these types of medical and psychological conditions. Moreover, Henry, as warden, was keenly aware and/or should have been about prior health risks, suicidal ideation, and self-harm requiring close monitoring, and yet did nothing.

41. Guard Defendants, upon information and belief, were aware of both of the pre-booking mental health issues suffered by the Decedant and the further November 15, 2023 report above. The Guard Defendants, acting under color of state law, realized a serious medical and psychological condition yet acted with deliberate indifference, including a failure to adequately monitor Decedent for excessive drug use, the need for detoxification, and the need for timely mental health assessments with regard to those serious medical conditions. Defendants failed to act and failed to provide care and/or transfer for care in a timely fashion. There was no legitimate reason to fail to act on the part of Defendants; for example, Decedent was not a frequent requestor of unwarranted medical services. Rather, Defendants acted with deliberate indifference. Specifically, the Guard Defendants acted with deliberate indifference to serious medical and psychological needs by having a custom, policy, or practice of ignoring these types of medical and psychological conditions.

42. Decedent, upon information and belief, was exhibiting signs of intoxication and mental distress, reached out for help, and would have survived had that help been provided and had all Defendants named herein acted appropriately, without an indifference to these serious mental health needs and without violation of his rights. Unfortunately, Defendants, jointly and severally, failed to treat and address the serious medical and mental health needs of Decedent, and Decedent died of acute intoxication by the combined effects

of bromazolam and buprenorphine on November 16, 2023 because the jail staff acted with deliberate indifference and failed to monitor Decedent and provide any medical or mental health treatment for his serious condition.

43. Defendants employed guards and/or prison staff who were directly responsible for Decedent, and despite knowing Decedent had serious medical and behavioral health conditions, including excessive drug use and suicidal ideation, acted with deliberate indifference to that serious medical need, leaving him alone and isolated for hours, failing to check on him at regular intervals.

44. Upon information and believe, the Cuyahoga County Sheriff's Department and County Prosecutor's Office have information that is relevant to the cause and manner of death, such that the Sheriff's Department was unable to release any further information pursuant to ORC 149.43, exempting the disclosure of "trial preparation records."

45. Thus, the claims asserted herein arise from acts, failures to act, and omissions committed, and policies, procedures, and customs in place and/or implemented or failed to be put in place or implemented, while Decedent was in the Cuyahoga County Corrections Center during which time Defendants, including but not limited to the Guard Defendants, Defendant Reese, County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz, all of whom were acting under the color of law, violated the known and clearly established Constitutional rights of Decedent to be free from the use of excessive force, cruel and unusual punishment, to due process of law, and to necessary emergency medical and mental health care and treatment and other constitutional rights.

46. Michelle Henry is personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because she was personally involved. She herself acted with deliberate indifference to Rogelio Latorre. Moreover, she encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages. She knew or should have known that Rogelio Latorre was suicidal and/or posed a risk of self-harm, requiring heightened monitoring. Upon reason and belief, she also had a policy of not believing inmates and not taking their need for detoxification and the threats of self-harm seriously which also contributed further to lack of adequate monitoring that could have prevented Decedent's eventual death.

47. Cuyahoga County Corrections Center is operating under a state of constant crisis, endangering the health and safety of Detainees/Inmates and staff alike on a daily basis. CCCC is underfunded, understaffed, poorly administered, and intentionally overcrowded, giving rise to a chaotic and perilous environment inside the jail walls. Detainees/Inmates are regularly denied access to adequate medical and mental health care, hygienic conditions, movement, sufficient and edible food, access to religion, and access to their attorneys. The conditions within CCCC violate the First, Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. Defendants have long been on notice of the horrific conditions and constitutional deprivations occurring daily at CCCC yet have failed to timely or effectively remedy the deplorable state of affairs.

48. It was impossible for Decedent and/or Plaintiff to exhaust any administrative remedies at the Cuyahoga County Corrections center for these claims because Decedent died prior to being able to initiate any administrative remedies.

49. Defendants, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz, and any other administrators known to the Defendant but not disclosed were responsible for the failure of the Cuyahoga County Corrections Center to report Decedent's jail death.

50. Pursuant to Ohio Adm. Code §5120:1-7-01, the Cuyahoga County Corrections Center was required to report any jail deaths to the Ohio Department of Rehabilitation and Correction.

51. Upon information and belief, Defendants, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz, and other administrative agents of the CCCC failed to report the jail death of the Decedents.

52. Upon information and belief, Defendants, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz instituted an informal policy or practice of not informing the Ohio Department of Rehabilitation and Corrections regarding jail death cases for the CCC, that was in place at the time of the Decedent's death.

53. Plaintiff seeks monetary damages (compensatory and punitive), as well as an award of costs and reasonable attorney's fees, and all such other relief as the Court deems appropriate.

**JURISDICTION AND VENUE**

54. The Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1331, as certain claims asserted herein arise under the Constitution and laws of the United States, to wit, the Fourth, Eighth and/or Fourteenth Amendments to the United States Constitution Due Process, and 42 U.S.C. § 1983.

55. Venue in the judicial district is proper pursuant to 28 U.S.C. §§ 1391(b)(2), (e)(1) and (e)(2).

## FACTUAL ALLEGATIONS

56. Defendants including but not limited to the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz are responsible for the Cuyahoga County Corrections Center (CCCC), including the care and treatment of Detainees/Inmates in custody therein. Defendants are required to ensure that the policies, practices, and customs of the CCCC comply with federal and Ohio law concerning the treatment of persons in custody.

57. Unconstitutional and deplorable conditions in the CCCC are a historic problem. Defendants including but not limited to the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz, have long been on notice of – and have even taken action to make conditions for inmates much worse, in including but not limited to – overcrowding, unhygienic conditions, movement restrictions, insufficient and inedible food, lack religious freedom, lack of access to their attorneys, and

inadequate medical and mental health care. Defendants have further long been on notice of the incompetent supervision and management of the CCCC.

58. The track record of the Defendants in operating a humane jail facility demonstrates continued indifference and longstanding, systematically unconstitutional operational procedures.

59. Defendants including but not limited to the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz instituted an informal policy or practice of not reporting deaths while in CCCC custody to the Ohio Department of Rehabilitation and Correction, despite an obligation to do so. The policy is hereinafter referred to as the "Policy."

60. The Policy directly contributed to the deplorable and Unconstitutional conditions in the CCCC by attempting to represent to the Ohio Department of Rehabilitation and Corrections that the jail was in better condition than it actually was, or that it was not in as deplorable of a condition.

61. The Policy had the effect of attempting to evade ODRC oversight and/or prevent the ODRC from knowing that additional measures needed to be taken to monitor the CCC.

62. Rogelio Latorre was born on December 9, 1997, and was only 25 years old at the time of his untimely death. He had been a resident of Cuyahoga County most of his life.

63. Armond Budish became the Cuyahoga County Executive in January of 2015 and he and the County began pushing what was referred to as "regionalization" of

the various jails in the County. The idea was for the County to house detainees and/or prisoners from surrounding communities in the Cuyahoga County Corrections Center and then charge money to the various cities that sent the detainees and/or prisoners. The stated purpose of the "regionalization" of the County's various jails was to increase revenue for the County to offset operating costs, all at eh expense of inmate rights. Budish himself stated that "regionalization" could make the county as much as $5.5 million dollars. A member of Budish's staff even boasted that they could make even more money if they added more detainees and/or prisoners.

64. The Cuyahoga County Corrections Center, however, was already overcrowded and overcapacity and full of unconstitutional conditions. In fact, sometime in 2017 then Cuyahoga County Corrections Center nursing director Marcus Harris was complaining about inmate health issues stemming from extremely low staffing levels. He stated that too many inmates were simply not being given critical healthcare, and that one nurse was doing as many as 100 intake assessments a day. He stated that he complained to the County, and nothing was done so he resigned his position.

65. Also, sometime in 2017 the union that represented staff and guards at the Cuyahoga County Corrections Center complained to the County that there were serious staffing level problems and health and safety problems at the Cuyahoga County Corrections Center. The complaint was ignored and/or denied.

66. On or about March of 2018 "regionalization" began with the transfer of the City of Cleveland inmates and/or detainees to the Cuyahoga County Corrections Center. The already overwhelmed Cuyahoga County Corrections Center was further overwhelmed

which affected the health and safety of the inmates. All Defendants knew this and acted with deliberate indifference.

67. In fact, on May 22, 2018, at a meeting of the Cuyahoga County Counsel the issues with the Cuyahoga County Corrections Center were discussed by Defendants in detail. It was agreed that the issues were "mission critical." There were admissions that the Cuyahoga County Corrections Center had been understaffed for "awhile." There were also admissions that it was a "historic problem" at the Cuyahoga County Corrections Center. Cuyahoga County Counsel member Dan Brady even stated, "it doesn't appear we know what we are doing."

68. After the May 22, 2018 meeting, Cuyahoga County Counsel members sent a letter to Budish on or about June 7, 2018 regarding the meeting and medical care in the County jail and sated "this is a life-or-death issue." Budish responded in a letter on or about June 8, 2018, but failed to take action and thus Budish and the County acted with deliberate indifference.

69. Still to this day, there remains a crisis at the jail; however, all Defendants willfully, purposefully, and deliberately ignored the issues, and they continued or further deteriorated in the years preceding Decedent's death.

70. On or about November 15, 2023, Decedent Rogelio Latorre was taken to CCCC to await trial on charges of drug possession. On that same day, Decedent was also referred to TASC for a substance abuse assessment and then referred to the Court Psychiatric Clinic due to his psychotic disorder.

71. On November 15, 2023, at the time of booking, Decedent Rogelio Latorre was observed to be lethargic, talking slowly, and believed to be under the influence of something. He was then taken to the medical unit at the Cuyahoga County Corrections Center. Over the course of the next 24 hours, the decedent was then moved to an isolation pod where inmates are only allowed out for 20 minutes a day. No further assessment, treatment, or special action was taken. This is deliberate indifference to a serious medical need. This was done based on police, practice, costume and lack of training and in violation of Rogelio Latorre's constitutional rights.

72. On November 16, 2023, Decedent Rogelio Latorre was found unresponsive in a cell and taken to Metro Health hospital by EMS. The decedent's cell was occupied solely by him, and consisted of a rectangular concrete floor, one concrete bed built into the wall, a metal toilet with attached sink, and two shelves built into the wall. Rounds are to occur regularly and in accordance with applicable policy, but Decedent was left unresponsive and without adequate supervision or care due to the failure of the Defendants, including but not limited to County, Pretel, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz. This was a violation of Rogelio Latorre's rights that directly contributed to and/or caused his death.

73. Decedent Rogelio Latorre died on November 16, 2023 from the injuries sustained at CCCC.

74. Latorre died as a direct and proximate result of the breaches, failures, negligence, costumes, policies, lack of training and violation of various laws, and

deliberate indifference by all Defendants including but not limited to the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz.

75. Plaintiff has requested a complete set of documents, records, and information from the County through official records requests and letters and, to date, the County has failed to provide a full and complete response, other than to provide his medical records. Upon information and belief relevant records have been destroyed and thus a claim for spoliation of evidence against Defendants is warranted.

76. The judges of the Cuyahoga County Court of Common Pleas, however, have publicly stated that "The County's indifference to the dangers created by failing to meet the needs of a very fragile and volatile prison population must end." They outlined how the "shortage of staffing in the jail contributes to a lack of identification of people who need medical and psychiatric care upon booking."

77. Moreover, the U.S. Department of Justice authored a report regarding the conditions in the Cuyahoga County Corrections Center shortly before the time of Decedent's stay and found, among other things, the following:

a. The facility is unsatisfactory/at risk.

b. Noncompliance with the Federal Performance Based Detention Standards were identified in all functional areas.

c. There is "an inadequate medical program."

d. There is no documentation available for review to identify life safety issue or to verify or discredit CCCC contributory factors.

e. The facility is operating over the American Correctional Associations rated capacity.

f. The facility was short 96 correctional officers.

g. The facility was short 13 medical staff.

h. The facility had inadequate or missing policies and procedures.

i. Warden's and assistant wardens do not visit the facility.

j. Training of staff is inadequate and management and supervisory staff only received 8 hours of training annually despite the fact that the FPBDS requires 24 hours annually after the first year.

k. The medical staff had expired CPR certifications; four have expired licenses; one licensed practical nurse has no license on file; one medical technical assistant did not have a diploma; two other nurses had partial CPR certifications; and one license practical nurse and one nurse practitioner have board actions on their verification but no documentation of the disposition. There was no job description for the mental health nurse practitioner.

l. Failure to perform post mortality reviews to identify the life safety issues and verify or discredit CCCC contributory factors.

m. 80% of detainees and inmates express concern to the U.S. Marshals concerning healthcare, including mental health services.

n. 100% of detainees and inmates fear retaliation by or from the security response team, staff, or other correctional officer staff members.

o. The intentional and deliberate use of food as a punitive measure.

p. denial of detainees and inmates' ability to perform basic hygiene needs and denial of inmates' access to showers, telephones and recreation due to the lock down system known as the "red zone" for periods of 27 hours or more in their cells.

q. failure to develop a clear plan to return a detainee to less restrictive conditions as promptly as possible.

r. failure to maintain records and housing unit logs and detainee interviews and records of disciplinary actions, grievances, and other investigative documents related to inmate complaints and/or concerns.

s. Sanitation at the mental health dispensary was minimally acceptable.

t. comprehensive medical and mental health appraisals are not conducted within 14 calendar days of the inmate's arrival.

u. there is a backlog in entering "kites" or request for medical treatment into the electronic medical record.

v. medical assessment of inmates before they were placed in restrictive housing or cells were performed on a limited basis or not performed

at all. Nor was a face to face meeting conducted at least once a week as required.

w. clinical mental health treatment is not provided in restrictive housing nor is there a face to face assessment conducted at least once a week.

x. staff are not utilizing use of force tools and techniques to ensure staff and detainee safety.

78. Decedent was detained at the Cuyahoga County Corrections Center from November 15, 2023 to November 16, 2023 and the conditions enumerated above still existed. During these periods of detention, Decedent was within the continuous exclusive custody, supervision, and control of All Defendants including but not limited to the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz and the Guard Defendants and medical staff Defendants and other Defendants named herein. All of the items listed in paragraphs 72 and 77 exhibited deliberate indifference and were a direct and proximate cause of Rogelio Latorre's death.

79. During his period of detention the Defendants including but not limited to Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz purposefully, maliciously, wantonly and/or with deliberate indifference to and/or callous and reckless disregard for his rights, health, and safety, as demonstrated above used, participated in, or authorized the use of excessive force and/or failed to provide medical care, failed to prevent or acquiesced in the disregard for the medical condition of Rogelio

Latorre for an excessive period of time while he struggled with health, mental health issues and suicidal ideation.

80. At all times relevant, it was the policy, practice, custom and/or procedure of all Defendants, including but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz and/or their employees who have final decision-making authority, to ignore or disbelieve health, mental health complaints or mentions of suicidal ideation, to deny emergency medical care, refuse to acknowledge the request by inmates to be seen for a medical evaluation and to disregard the written requests by inmates for medical treatment. The policy, practice, custom and/or procedure constitutes deliberate indifference to and/or a callous disregard for the known and clearly established Constitutional due process rights of Rogelio Latorre and other detainees in the custody of the Cuyahoga County Corrections Center all of which shocks the conscience and violates traditional notions of decency.

81. At all times relevant, All Defendants including but not limited to the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner and Diaz failed and/or refused to adequately train and/or supervise their deputies, officers, and employees, in the reasonable and appropriate medical care, the denial of emergency medical care, refused to acknowledge the request by inmates to be seen for a medical evaluation and the appropriate handling of the written requests by inmates for medical treatment.

82. At all times relevant, All Defendants including but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz, failed to provide medical treatment related training policies, customs, practices, and/or procedures and/or they were so deficient, inadequate and/or unreasonable that violations of Constitutional rights of detainees, including Rogelio Latorre, were certain and likely to, and in fact did, occur. These policies, practices, customs and/or procedures constitute deliberate indifference to and/or a callous disregard for the known and clearly established Constitutional due process rights of Rogelio Latorre, and other detainees in the custody of the Cuyahoga County Corrections Center, all of which shocks the conscience and violates traditional notions of decency.

83. It was impossible for Decedent and/or Plaintiff to exhaust any administrative remedies for these claims because Decedent was extremely ill and then died prior to being able to initiate any administrative remedies.

## FIRST CLAIM FOR RELIEF

**(Violation of 42 U.S.C. § 1983 Against All Defendants, including but not limited to, the County, in its individual and official capacity, and Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Diaz, the Guard Defendants and Defendant Reese, Doe Staff, Doe Officers and Doe Medical in their individual Capacity for Failure to Supervise, Train, and Take Corrective Measures Causing Constitutional Violations of the Eighth and Fourteenth Amendments.)**

84. Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

85. Plaintiff's Decedent was a citizen of the United States.

86. At all times material Decedent had a serious medical and mental health needs that were known and/or should have been known to all Defendants including but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz.

87. At all times material, all Defendants including but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz, were acting under color of state law in their various roles.

88. All Defendants including, but not limited to the County, Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz knew of a custom, propensity, and pattern at times relevant to the allegations herein, as described above, that among Corrections Deputies and Nursing staff there was a pattern for failing and/or refusing to provide prompt and competent access to and delivery of medical and mental health assessment, evaluation, care, intervention, referral, and treatment, to detainees, including Rogelio Latorre. All Defendants including, but not limited to Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz disregard of the knowledge, or failure and/or refusal to adequately investigate and discover and correct such customs and propensities, proximately caused the violation of the Constitutional rights of Rogelio Latorre as alleged herein.

89. Plaintiff is informed and believes and thereon alleges that prior to the incident alleged herein, All Defendants including, but not limited to the County, Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz and other nursing staff, deputies, officers, employees, agents, medical directors, medical and mental providers, and doctors, acting under their authority as officers and/or within the course and scope of their employment, committed similar acts of:

a. Failing and/or refusing to provide timely adequate access to and delivery of mental health and medical care, assessment, evaluation, intervention, referral, and treatment for detainees with obvious and/or known serious mental and medical health conditions and needs;

b. Failing and/or refusing to provide adequate housing and properly classify detainees so that they will have timely and adequate access to and delivery of necessary and indicated medical and mental health assessment, evaluation, care, intervention, referral, and treatment;

c. Failing and/or refusing to designate certain types and modalities of force as medically contraindicated for certain detainees whom have known, or knowable, serious medical and mental health conditions; and

d. Failure and/or refusal to provide adequate monitoring and housing for detainees who present risk of serious physical and/or mental harm and death.

90. Plaintiff is informed and believes and thereon alleges that all Defendants including, but not limited to the County, Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz knew, or should have known, of their pattern or practice of unconstitutional violations, or the existence of facts, practices, customs and/or habits, which create the strong potential for unconstitutional acts, and all Defendants including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz had a duty to supervise, train, and instruct their subordinates to prevent similar acts to other detainees, including Rogelio Latorre, but failed and/or refused to take reasonable and necessary steps to properly supervise, train, instruct, or investigate officers, physicians, nurses, medical and mental health personnel and as a direct and proximate result, Rogelio Latorre was harmed and suffered death in the manner cause by the patterns or practices.

91. At all times relevant, All Defendants including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz had the duty:

a. To train, supervise, and instruct deputies, officers, nurses, physicians, medical and mental health personnel, and other agents and employees

to ensure that they respected and did not violate federal Constitutional and statutory rights of detainees with regard to providing necessary medical care and the reasonable and appropriate use of force;

b. To objectively investigate incidents of in-custody injury, deaths, inadequate classifications and contraindicated housing, denials of prescription medications, and incidents of in-custody use of excessive force and uses of contraindicated force, and to take necessary remedial action;

c. To provide access to and delivery of timely competent medical and mental health assessment, evaluation, intervention, referral, care, treatment, follow-up, and attention to medically and/or mentally ill detainees;

d. To monitor the medical and mental health care and treatment provided to mentally and physically ill detainees;

e. To monitor and periodically review the adequacy of medical and custodial staffing to ensure adequacy of medical and mental health care, treatment, intervention, referral, and attention rendered to mentally and physically ill detainees;

f. To monitor and periodically review the classification and housing of mentally and physically ill detainees to ensure they are properly classified and housed;

g. To comply with the statutory guidelines and the standard of care protecting detainees and/or custodial setting;

h. To adequately discipline and establish reasonable procedures to document and correct past violations, and to prevent future violations of Constitutional right of detainees, by not condoning, ratifying and/or encouraging the violation of Rogelio Latorre's and other detainees' constitutional rights; and

i. To adequately and periodically train custodial and medical and mental health staff on understanding, recognizing, reporting and responding to issues of physical and mental health episodes/symptoms of detainees.

92. All Defendants including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz acted with deliberate indifference towards inmates by:

a. Failing and/or refusing to train, supervise, and instruct deputies, officers, nurses, physicians, medical and mental health personnel, and other employees, on the violations of the Constitutional rights of Rogelio Latorre and other detainees;

b. Failing and/or refusing to objectively investigate in-custody injury, deaths, inadequate classifications and contraindicated housing, denials of prescription medications, and incidents of in-custody use of excessive

force and uses of contraindicated force, and failing and/or refusing to take necessary remedial action;

c. Failing and/or refusing to provide timely competent medical and mental health assessment, evaluation, care, treatment, referral, and intervention for mentally and physically ill detainees, which resulted in serious injury or death;

d. Failing and/or refusing to monitor a detainee's medical and mental health condition, which resulted in serious injury or death;

e. Failing and/or refusing to monitor and periodically review the quality of medical and mental health assessment, evaluation, care, treatment, referral, and intervention provided to mentally and physically ill detainees;

f. Failing and/or refusing to monitor and periodically review the timelines and adequacy of medical and mental health assessment, evaluation, care, treatment, referral, and intervention rendered to mentally and physically ill detainees;

g. Failing and/or refusing to monitor and periodically review the classification of detainees to ensure they are properly housed;

h. Failing and/or refusing to comply with the statutory guidelines and the standards of care protecting detainees and/or in the custodial setting;

i. Failing and/or refusing to adequately discipline and establish reasonable procedures to documents and correct past violations, and to prevent

future violations of Constitutional rights of detainees by not condoning, ratifying, and/or encouraging the violation of Rogelio Latorre's and other detainees' constitutional rights;

j. Failing and/or refusing to adequately and periodically train custodial and medical and mental health staff on understanding, recognizing, reporting, and responding to issues of physical and mental health episodes/symptoms of detainees; and

k. Overseeing, supervising, authorizing, approving of and/or ratifying the medical and mental health care and access thereto provided and not provided to Rogelio Latorre.

93. All Defendants including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz are personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because they were personally involved. They themselves acted with deliberate indifference to Rogelio Latorre. Moreover, they encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's death.

94. As a direct and proximate result of the conduct of All Defendants including, but not limited to Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz caused Rogelio Latorre to be forced to endure and suffer extreme physical, mental

and emotional pain and suffering, death, and pecuniary loss, including medical expenses, funeral and burial expenses, and lost earning and/or benefits.

**WHEREFORE**, Plaintiff prays for judgment against All Defendants in their individual and official capacity and/or against the County, for:

a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Rogelio Latorre and his next of kin;

b. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C § 1988; and

c. All such relief which the Court deems appropriate.

**SECOND CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against All Defendants, including but not limited to, the County and Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Diaz, Guard Defendants, and Defendant Reese, Doe Officers, Doe Staff and Doe Medical in their official capacity, for Custom, Policy, failure to train employees or Practice Causing Constitutional Violations of the Eighth and Fourteenth Amendments, a Monell Claim pursuant to *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)).**

95. Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

96. At all times material, All Defendants, including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz promulgated

and maintained a de facto unconstitutional custom, policy, or practice of permitting, ignoring, and condoning and/or encouraging officers, deputies, nurses, physicians, medical and mental health personnel, and other employees and agents to use contraindicated and/or excessive force, or to participate and/or acquiesce in the denial of medical care detainees, including Rogelio Latorre, all of which shocks the conscience and offends traditional notions of decency, including, but not limited to:

a. The use of knowing denial of mental health and medical care, and conduct purely for punitive purposes;

b. The failure and/or refusal to provide timely and adequate mental health and medical evaluations of detainees, including Rogelio Latorre; and

c. The failure and/or refusal to provide timely and adequate medical and mental health assessment, evaluation, intervention, referral, treatment, and care as described herein.

d. The failure to train employees on the proper provision of medical treatment and/or psychological treatment, excessive drug use, and self-harm / suicide prevention.

e. The failure to perform post-mortem reviews of death in the Cuyahoga County Corrections Center.

f. The use of force tools and techniques to ensure detainee safety were not followed at CCCC as it relates to the threats made against Rogelio Latorre.

97. These customs, policies and/or practices were the direct and proximate cause of the Constitutional violations visited upon, and the injuries and death of Rogelio Latorre. Defendants, acting in accordance with these customs, policies, or practices used excessive, unreasonable, outrageous and impermissible denial of medical treatment and/or otherwise acted in a manner that shocks the conscience and offends traditional notions of decency. This was all deliberate indifference and a substantial contributing factor to Rogelio Latorre's death.

98. At all times relevant, the policies, customs and/or procedures referenced in this Complaint were facially and/or de facto violative of the clearly established and known rights of detainees at the Cuyahoga County Corrections Center, including Rogelio Latorre and their implementation constitutes deliberate indifference to and/or reckless and callous disregard for the Constitutional rights of detainees, secured by the Eighth and Fourteenth Amendment of the United States Constitution, including the right to due process of law, life, liberty, and to be free from excessive and unreasonable uses of force, and to be free from cruel and unusual punishment which shook the conscience and offend traditional notions of decency.

99. At all times relevant, the policies, customs and/or procedures referenced in this Complaint were applied in such a manner and known by All Defendants to be applied in such a manner, that violations of the Constitutional rights of detainees were substantially certain to, and did, occur. Furthermore, the application and/or misapplication of these policies, practices, and/ or procedures amount to violations of the Constitutional rights of Rogelio Latorre, secured by the Eighth and Fourteenth Amendments to the United States

Constitution, including the right to due process of law, life, liberty, and to be free from excessive and unreasonable uses of force and from cruel and unusual punishment which shock the conscience and offend traditional notions of decency.

100. The Defendants failure to perform post-mortem reviews prior and subsequent to the death of an inmate constitutes deliberate indifference to the rights and safety of inmates and was a substantial contributing factor to the death of Rogelio Latorre.

101. Pursuant to Rule 5120:1-7-01 of the Ohio Administrative Code, the Defendants had a duty to report all jail deaths to the Ohio Department of Rehabilitation and Corrections (ODRC).

102. The Defendants, however, failed to report jail deaths before Rogelio Latorre's death and failed to report Rogelio Latorre's death to the ODRC.

103. The failure of the Defendants to report the jail deaths directly contributed to the deteriorating conditions of the CCCC.

104. The Defendants instead instituted the Policy to avoid increased oversight by the ODRC.

105. The Policy had the direct and proximate cause of allowing for the conditions of the jail and the conditions of medical care at the CCCC to deteriorate.

106. The Policy had the direct effect of causing the death of Rogelio LaTorre, because it helped to contribute to the deplorable conditions and lack of sufficient training at the CCCC.

107. The Defendants' failure to train its employees including corrections officers and nursing staff regarding policies and procedures related to the investigation of threats

that lead to the complaints of mental and physical health issues including suicidal ideation and to take measures to treat inmates with said risks. This constitutes deliberate indifference and was a substantial contributing factor in the death of Rogelio Latorre.

**WHEREFORE**, Plaintiff prays for judgment against All Defendants, for:

a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Rogelio Latorre, and his next of kin, for their injury, damage, and loss;

b. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

c. All such other relief which the Court deems appropriate.

**THIRD CLAIM FOR RELIEF**

**(Violation of 42 U.S.C. § 1983 Against all Defendants, including but not limited to, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Guard Defendants, Doe Officers, Doe Staff, Doe Medical and Defendant Reese, for cruel and unusual punishment for failure to provide reasonably adequate medical care in Violation of the Eighth and Fourteenth Amendments.)**

108. Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

109. Plaintiff's Decedent was a citizen of the United States.

110. At all times material Decedent had serious medical and mental health needs that was known to all Defendants including, but not limited to, the Guard Defendants, the

County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz.

111. At all times material, all Defendants including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz were acting under color of state law.

112. On November 15, 2023, Rogelio Latorre was a known health and self-harm risk because of his history of self-harm and drug use, yet this was deliberately ignored, and no further action was taken to assess this risk. No further action was taken to assess the risk and further failed to investigate the allegations that led to his death. All Defendants including, but not limited to Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz are personally responsible for the unconstitutional acts committed upon Rogelio Latorre that directly or indirectly contributed to the injuries suffered by Rogelio Latorre because they were personally involved. They themselves acted with deliberate indifference to Rogelio Latorre. Moreover, they encouraged, authorized, approved, or knowingly acquiesced to the constitutional violations that lead to Rogelio Latorre's damages.

113. The acts and omissions of all Defendants, including, but not limited to Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz including, but not limited to, with deliberate indifference ignoring the complaint of Rogelio

Latorre and knowingly depriving Rogelio Latorre of the medical and mental health care needs while confined, neglecting his cries for help, participating in the forgoing acts and omissions, ordering, authorizing, directing, supervising, approving and/or ratifying the foregoing acts and omissions, and acquiescing, failing and/or refusing to prevent the foregoing acts and omissions, constitute conduct under the color of state law which deprived Rogelio Latorre of his clearly established and known rights, privileges, and immunities secured by the Constitution and laws of the United States.

114. As a direct and proximate result of the foregoing conduct All Defendants, including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz deprived Rogelio Latorre of his clearly established and known rights under the Eighth and Fourteenth Amendments of the United States Constitution. More specifically, all Defendants, including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz deprived Rogelio Latorre of: (1) his right to be free from a deprivation of life and liberty without due process of law; and (2) his right to be provided with adequate medical mental health care and to free from the use of excessive, outrageous, and unreasonable force, which shocks the conscience and offends traditional notions of decency.

115. As a direct and proximate result of all Defendants including, but not limited to the Guard Defendants, the County, Pretel, Nestor, Budish, Ronayne, Henry, Soltis, Jones, Gibson, Carney, Bruner, Doe Staff, Doe Medical, Doe Corrections, Reese and Diaz

deprived Rogelio Latorre of Rogelio Latorre's Constitutional rights, which resulted in his wrongful and untimely death, Rogelio Latorre was forced to endure and suffer extreme physical, mental, and emotional pain and suffering, death, and pecuniary loss, including medical expenses, funeral and burial expenses, and lost earning and/or benefits.

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, for:

Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Rogelio Latorre, and his next of kin, for their injury, damage, and loss;

a. Punitive damages in an amount that will serve to adequately punish and deter the conduct alleged herein;

b. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C. § 1988; and

c. All such other relief which the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

**(Medical Malpractice against Metro, Bruner, Diaz, Reese, Doe Medical and Defendant Reese)**

116. Plaintiff restates and incorporates the previous paragraphs by reference as if fully rewritten herein.

117. Metro, Bruner, Diaz, Doe Medical, Reese and nurses and medical staff including Defendant Reese listed above as Defendants had a duty to provide thorough medical care to Rogelio Latorre including but not limited to testing, treatment and diagnoses. All Defendants failed to do so.

118. Metro, Bruner, Diaz, Doe Medical, Reese and nurses and medical staff that evaluated, saw, and treated Rogelio Latorre did not properly assess and/or evaluate his serious risk for self-harm, excessive drug use, and/or self-harm and, in fact, ignored his serious risk of self-harm, leaving him under-monitored and without adequate care. This was negligent and below the standard of care.

119. As a result of the failures and negligence Rogelio Latorre died.

120. During all the times alleged herein Plaintiff was receiving and/or supposed to be receiving medical treatment from Metro, Bruner, Diaz, and Reese.

121. The care, treatment, monitoring, and/or services provided to Rogelio Latorre was negligent and below the standard of care.

122. Metro and the County were negligent in failing to employ and/or contract with individuals who could and would treat Rogelio Latorre with the same level of care that other reasonably careful medical providers and physicians would provide under the same circumstances.

123. Metro and the County themselves and/or through their employees and/or agents, including but not limited to the individual physician Defendants, failed to properly provide medical services, failed to provide appropriate staffing, and failed to have proper protocols and policies in place.

124. Metro and the County were negligent in failing to employ individuals who could and would treat Rogelio Latorre in accordance with accepted practices of health care facilities.

125. Metro and the County failed to establish appropriate standards for physicians, nurses, aides, and/or other medical providers who were employed by and/or were in a contractual relationship with Metro and the County to provide medical care to inmates.

126. Metro and the County negligently failed to establish appropriate standards for physicians, nurses, aides, and/or other medical providers who were employed by and/or were in a contractual relationship with Metro and the County to provide medical care to inmates.

127. As a direct and proximate result of the collective and/or individual negligence of Metro and the County jointly and/or severally, by themselves and/or through their employees and/or agents, Rogelio Latorre was not provided proper medical testing commensurate with the requisite standard of care and has suffered damages.

**WHEREFORE**, Plaintiff prays for judgment against Metro, County, and/or the John/Jane Doe Medical Providers 1-5 listed above.

a. Compensatory damages in an amount in excess of the jurisdictional limit of $75,000 that will fully and fairly compensate Plaintiff, the Estate of Rogelio Latorre and his next of kin;

b. Costs of suit and reasonable attorney's fees pursuant to 42 U.S.C § 1988; and

c. All such relief which the Court deems appropriate.

Respectfully submitted,

*/s/ Thomas D. Robenalt*______________
THOMAS D. ROBENALT (0055960)
ABIGAIL G. PORTER (0098998)
ALEXANDER H. MAXWELL (0101248)
**THE ROBENALT LAW FIRM, INC.**

23550 Center Ridge Rd., Suite103
Westlake, Ohio 44145
Phone: 216-223-7535
Fax: 216-307-2352
Email: trobenalt@robenaltlaw.com
aporter@robenaltlaw.com
amaxwell@robenaltlaw.com

*Attorneys for Plaintiff*

**JURY DEMAND**

Plaintiff hereby demands a trial by jury on all triable issues.

Respectfully submitted,

*/s/ Thomas D. Robenalt*______________

THOMAS D. ROBENALT (0055960)
ABIGAIL G. PORTER (0098998)
ALEXANDER H. MAXWELL (0101248)
**THE ROBENALT LAW FIRM, INC.**
23550 Center Ridge Rd., Suite103
Westlake, Ohio 44145
Phone: 216-223-7535
Fax: 216-307-2352
Email: trobenalt@robenaltlaw.com
aporter@robenaltlaw.com
amaxwell@robenaltlaw.com

*Attorneys for Plaintiff*